UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BEN HILL GRIFFIN, INC.

    Plaintiff,

v.                                    Case No. 8:21-cv-2311-VMC-TGW

ADAM "AJ" ANDERSON, et al.,

    Defendants.
_____/

**ORDER**

    This matter comes before the Court upon consideration of Defendants A.W.A., Adam "AJ" Anderson, Cierra Michelle Anderson, Michelle R. Anderson, Candice Nicole Luke, and Sheenia Dannett Nealey's Motion for Summary Judgment (Doc. # 73), filed on May 25, 2022. Defendants Dakota T. Bond, Matthew Bond, Ryan E. Bond, E.S.W., and Cheyanne Wilkerson responded on June 14, 2022 (Doc. # 78), and Defendants A.W.A., Adam "AJ" Anderson, Cierra Michelle Anderson, Michelle R. Anderson, Candice Nicole Luke, and Sheenia Dannett Nealey replied on June 16, 2022. (Doc. # 80). For the reasons that follow, the Motion is granted.

I.   **Findings of Fact**

    This ERISA case arises out of the tragic deaths of Adam and Eva Anderson on July 19, 2021. Adam W. Anderson's

employer, Ben Hill Griffin, Inc., seeks a declaratory judgment as to the distribution of Adam Anderson's deferred compensation and retirement plans.

    **A.**   **The Parties**

Adam W. Anderson ("Adam Anderson") is a deceased individual who died on or about June 19, 2021. (Doc. # 73-1 at 20). Until his passing, Adam Anderson was an employee with Plaintiff Ben Hill Griffin, Inc. (Doc. # 47-8).

Eva W. Anderson ("Eva Anderson") is a deceased individual who died on or about June 19, 2021. (Doc. # 73-1 at 7-8). On the date of her death, Eva Anderson was married to Adam Anderson. (Id.).

Sheenia Dannett Nealey ("Sheenia Nealey") and Adam "AJ" Anderson ("AJ Anderson") are the adult children of Adam Anderson from his previous marriage to Michelle R. Anderson ("Michelle Anderson"). (Doc. # 47 at ¶ 15(a)-(b); Doc. # 55 at ¶ 15; Doc. # 59 at ¶ 15(a) -(b); Doc. # 60 at ¶ 15(a)-(b); Doc. # 61 at ¶ 15(a)-(b); Doc. # 67 at ¶ 15). Cierra Michelle Anderson ("Cierra Anderson") is the adult daughter of Sheenia Nealey and was legally adopted by Adam and Michelle Anderson. (Doc. # 47 at ¶ 15(c)). Candice Nicole Luke ("Candice Luke") is alleged to be the adult daughter of Adam Anderson. (Id. at ¶ 15(d)). A.W.A. is the minor daughter of Adam and Eva

Anderson. (Id. at ¶ 15(h)). Candice Luke, Sheenia Nealey, A.W.A., and AJ, Cierra, and Michelle Anderson will hereinafter be referred to as the "Anderson Defendants."

Cheyanne Wilkerson, Matthew Bond, Ryan E. Bond, and Dakota T. Bond are the adult children of Eva Anderson from a previous marriage. (Id. at ¶¶ 15(f)-(g), (i)-(j)). E.S.W. is the minor daughter of Eva Anderson from a previous marriage. (Id. at ¶ 15(k)). Cheyanne Wilkerson, E.S.W., and Matthew, Ryan, and Dakota Bond will hereinafter be referred to as the "Wilkerson Defendants."

As mentioned above, Ben Hill Griffin, Inc., the Plaintiff in this case, was the employer of Adam Anderson until his death on June 19, 2021. (Id. at ¶ 10). Ben Hill Griffin, Inc. is the administrator of two of Adam Anderson's ERISA covered employee pension benefit plans. (Id. at ¶ 3).

### B. **The Deaths of Adam and Eva Anderson**

Adam and Eva Anderson were found dead at their residence in Frostproof, FL, on the morning of June 19, 2021. (Doc. # 73-1 at 7). No one else was present with the couple at the time of their deaths. (Id.). The manner of Eva Anderson's death was determined to be a homicide, caused by two apparent gunshots. (Id. at 4, 18). Eva Anderson's death was determined to be "sudden and instantaneous." (Id. at 4). The manner of

Adam Anderson's death was determined to be suicide, caused by one gunshot wound to the side of his head. (Id.).

Based on the instantaneous nature of Eva Anderson's death, the location of Eva and Adam Anderson's respective gunshot wounds, the separate locations in the room where both of their bodies were found, and the positions of their bodies, the medical examiner concluded that Eva Anderson died before Adam Anderson. (Id. at 5). Accordingly, Adam Anderson's Death Certificate indicated his marital status at the time of death as "widowed," while Eva Anderson's indicated she was "married." (Id. at 8, 21).

C.   **The Deferred Compensation and Retirement Plans**

Until his death, Adam Anderson was a participant in two deferred compensation and retirement plans, which are the subject of this action: the Ben Hill Griffin, Inc. Employees' Profit-Sharing Plan and Trust Agreement (the "Profit-Sharing Plan") and the Ben Hill Griffin Inc. Management Security Plan (the "MS Plan") (jointly, the "Pension Plans"). (Doc. # 47 at ¶ 3).

The Profit-Sharing Plan is a tax qualified retirement plan under Internal Revenue Code Sections 401(a) and 501(a) et seq. (Doc. # 47-5). The beneficiary designation of Mr. Anderson on file with the Plan Administrator lists Eva

Anderson, wife, as the sole beneficiary of his account balance. (Doc. # 47-6 at 2). No contingent or other beneficiary is listed or designated. (Id.).

The MS Plan is a non-qualified plan of deferred compensation. (Doc. # 47-8). Article 4 of the MS Plan provides a death benefit in the case of death before retirement in an amount equal to one-hundred percent of defined "Covered Salary" for the first twelve months after death and then fifty percent of defined "Covered Salary" for the later of the next 108 months or whenever the Participant turned 65. (Id. at 6). Under the plan, the "Covered Salary" is the "portion of a Participant's base annual salary excluding bonuses or other fringe benefits, if any, which the Participant chooses as a basis for computation of the Retirement or Death Benefit pursuant to the terms and conditions of this Plan." (Id. at 4). Adam Anderson's "Covered Salary" was $2,500 per month. (Id. at 14). Adam Anderson was born on April 2, 1966, and was 55 years old at the time of his death. (Doc. # 47 at ¶ 35).

On January 3, 2020, Adam Anderson delivered a Change of Beneficiary Form for Death Benefit in the MS Plan to Ben Hill Griffin. (Doc. # 47-9 at 2). On that form, Adam Anderson handwrote that Michelle Anderson was a primary beneficiary, to receive $1,026 per month, Eva Anderson was a primary

beneficiary, to receive $2,724 per month, and that as to Eva Anderson's share only, A.W.A. was the secondary beneficiary. (Id.).

> ### D.    **Adam and Michelle Anderson's Divorce Judgment**

Adam and Michelle Anderson's divorce became final on March 13, 2012. (Doc. # 73-4 at 7). The Family Court found that Adam Anderson's interest in the Profit-Sharing Plan was a vested, marital asset subject to equitable distribution, and that Michelle Anderson was entitled to a share of this interest in the amount of "Thirty-Five Thousand Five Hundred Seventy-Eight and 81/100 Dollars ($35,578.81) plus any passive gains or losses having accrued from December 31, 2011, until distribution of the Wife's interest." (Id. at 21).

The Family Court found that Adam Anderson's interest in the MS Plan was a vested, marital asset subject to equitable distribution, and that Michelle Anderson was entitled to an award equal to fifty percent of Adam Anderson's retirement benefit payable under the MS Plan as of February 1, 2012. (Id.). Adam Anderson was directed to retain Michelle Anderson as a beneficiary of his interest to be distributed to her. (Id. at 22). However, the Family Court did not make any specific finding with respect to Michelle Anderson's interest

6

in Adam Anderson's death benefit under the MS Plan. (Id. at 21–22).

On or about October 26, 2021, after Eva and Adam Anderson's deaths, the Family Court for the Divorce Action entered an order entitled "Qualified Domestic Relations Order" ("QDRO") with respect to Michelle Anderson's share of Adam Anderson's interest in the Profit-Sharing Plan. (Id. at 37). The purported QDRO directed Plaintiff Ben Hill Griffin to divide Adam Anderson's interest in the Profit-Sharing Plan into two separate accounts, effective December 31, 2011: one account to be allocated and assigned to Defendant Michelle Anderson in the amount of $35,578.81, plus any passive gains or losses having accrued as of December 31, 2011, until distribution, and a second account in the name of Adam Anderson where the balance of his interest in the Profit-Sharing Plan would remain. (Id. at 38).

Ben Hill Griffin initiated this action on September 30, 2021. (Doc. # 1). It filed the operative complaint — the Amended Complaint — on December 16, 2021. (Doc. # 47). The Amended Complaint contains the following counts: declaratory judgment as to the Profit-Sharing Plan (Count I) and declaratory judgment as to the MS Plan (Count II). The Anderson Defendants now seek the entry of summary judgment on

7

both counts. (Doc. # 73). The Wilkerson Defendants have responded (Doc. # 78), which the Court construes as a Motion to Strike. The Anderson Defendants have replied, which also serves as a response to the construed Motion to Strike. (Doc. # 80). The Motions are now ripe for review.

## II.  Legal Standard

### A.  Motion to Strike

Expert report disclosures are governed by Federal Rule of Civil Procedure 26. Rule 26(a)(2) requires a party to disclose to the other parties the identity of any expert witness it may use at trial to present evidence and, "[e]xcept as otherwise stipulated or directed by the court, this disclosure shall . . . be accompanied by a written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2). The expert's written report must contain:

> a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). While Rule 26(a)(2)(B) "does not require that a report recite each minute fact or piece of scientific information that might be elicited on direct examination" it must be "detailed enough to provide the opposing party an opportunity to adequately cross examine the expert[.]" Kleiman v. Wright, No. 18-CV-80176, 2020 WL 6729362, at *5 (S.D. Fla. Nov. 16, 2020).

     **B.   Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.

1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his

conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. <u>Conclusions of Law</u>

### A.   <u>Construed Motion to Strike</u>

In their response to the Anderson Defendants' Motion for Summary Judgment (Doc. # 73), the Wilkerson Defendants' only argument is that the Motion relies on an affidavit from the medical examiner that was not submitted prior to the filing of the Motion. (Doc. # 78 at 4). The Wilkerson Defendants argue that the Anderson Defendants failed to disclose the affidavit of Dr. Vera V. Volnikh prior to the May 2, 2022, deadline to disclose expert reports and so the Court should not rely on the affidavit for summary judgment purposes. (<u>Id.</u>). The Court thus construes the Wilkerson Defendants' response as a Motion to Strike the affidavit of Dr. Vera V. Volnikh and will address it accordingly.

"When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report." <u>In re Denture Cream Products Liability Litig.</u>, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) (internal citation and quotations omitted). An

expert report is required only when a treating physician offers "opinions beyond those arising from treatment." Id. Typically, treating physicians are only required to satisfy the lower standard of Rule 26(a)(2)(C). See Bostick v. State Farm Mut. Auto. Ins. Co., No. 8:16-cv-1400-VMC-AAS, 2017 WL 2869967, at *2 (M.D. Fla. July 5, 2017) ("Under the plain language of Rule 26(a)(2)(B), Bostick's treating physicians were not required to provide written reports because they were not retained or specially employed to provide expert testimony."); Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-1094-JEC 2013 WL 1189483, at *12 (N.D. Ga. Mar. 12, 2013) ("Accordingly, if a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no [Rule 26(a)(2)(B)] report is required, albeit the [Rule 26(a)(2)(C)] report discussed above will be required." (internal citations omitted)).

Pursuant to Rule 26(a)(2)(C), a party must submit an expert disclosure for any expert witness not required to submit an expert report. That expert disclosure must state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703,

or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Rule 37(c), Fed. R. Civ. P., provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." As explained in Mitchell v. Ford Motor Company, 318 F. App'x 821, 824 (11th Cir. 2009), "[t]he burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Furthermore, "in determining whether the failure to disclose was justified or harmless, [the Court] consider[s] the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." Lips v. City of Hollywood, 350 F. App'x 328, 340 (11th Cir. 2009).

Here, while the Anderson Defendants are correct that Dr. Volnikh is not an expert retained for litigation and so is not required to provide a Rule 26(a)(2)(B) report, the Anderson Defendants were still required to provide disclosures in accordance with Rule 26(a)(2)(C). The

13

affidavit at issue is from Dr. Vera V. Volnikh, an Associate
Medical Examiner with the Medical Examiner's Office for Polk,
Hardee, and Highlands Counties. (Volnikh Aff. Doc. # 73-1 at
¶ 1). In her affidavit, Dr. Volnikh asserts that she was
responsible for determining the cause of deaths for Adam and
Eva Anderson. (Id. at ¶ 9). Dr. Volnikh conducted the
autopsies of Adam and Eva Anderson and prepared the autopsy
reports, wherein she determined the cause of each of their
deaths. (Doc. # 73-1 at 9-13, 22-27). Therefore, Dr. Volnikh
was not retained for litigation such that a written report is
required under Rule 26(a)(2)(B). See Cruz v. United States,
No. 12-21518-CV, 2013 WL 246763, at *5 (S.D. Fla. Jan. 22,
2013) ("'A treating physician is not required to provide an
expert report [under Rule 26(a)(2)(B)] in order to testify as
an expert' if he or she is not a retained expert[.]" (internal
quotations omitted)).

However, courts have found witnesses subject to the
disclosure requirements of Rule 26(a)(2)(C) where they form
opinions based on the personal knowledge gained during
treatment. See Torres v. Wal-Mart Stores East, L.P., 555 F.
Supp. 3d 1276, 1297 (S.D. Fla. 2021); Goins v. Royal Caribbean
Cruise, Ltd., 16-21368-CIV-WILLIAMS/SIMONTON, 2017 WL 5749778
(S.D. Fla. May 17, 2017) (finding a treating physician who

testified as to his medical opinion to be subject only to
Rule 26(a)(2)(C), not Rule 26(a)(2)(B)); see also O'Brien v.
NCL (Bahamas) Ltd., No. 16-23284-CIV, 2017 WL 8315925, at *2
(S.D. Fla. Aug. 25, 2017) ("[A] 2010 amendment to the Federal
Rules established a separate reporting classification
in Rule 26(a)(2)(C) for witnesses who will testify as fact
witnesses as well as offer expert opinions, a category into
which treating physician experts often fall."). Here, Dr.
Volnikh's affidavit is not strictly limited to her factual
observations gleaned during the autopsy. Rather, she is
applying her specialized knowledge to her personal
observations to opine on the order of Eva and Adam Anderson's
deaths. See Kimbrough v. Weidner, No. 1:17-cv-774-TWT, 2018
WL 2575061, at *3 (N.D. Ga. July 24, 2018) ("Here, [the
treating physician] is "more akin to a 'percipient witness'
under Rule 26(a)(2)(C) . . . because he has firsthand
knowledge of the facts of the case," and because his opinions
are "based on observations made during the course of treatment
. . . ." (citing Kondragunta, 2013 WL 1189493, at *12)). Thus,
her affidavit more closely resembles testimony from a hybrid
witness. See Architects Collective v. Pucciano & English,
Inc., 247 F. Supp. 3d 1322, 1333 (N.D. Ga. 2017) (finding a
witness subject to the disclosure requirements of Rule

26(a)(2)(C) where his testimony was based on "particularized knowledge garnered from his years of experience as an architect designing his own architectural plans."). The Anderson Defendants were therefore required to identify Dr. Volnikh and identify the subject matter of her testimony and provide a summary of the facts and opinions on which she was expected to testify as part of their Rule 26 disclosures.

The Anderson Defendants do not argue that they complied with Rule 26(a)(2)(C). Although they note that the Wilkerson Defendants' counsel received the medical records that are the subject of the present motion, this alone is insufficient to satisfy even the more relaxed disclosure requirements of Rule 26(a)(2)(C). See Sweat v. United States, No. 14-cv-888-EAK-JSS, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015) ("To satisfy the Rule 26(a)(2)(C) disclosure obligation, the expert witness should do more than merely produce records."); Jones v. Royal Caribbean Cruises, Ltd., No. 12-20322-CIV, 2013 WL 8695361, at *4 (S.D. Fla. Apr. 4, 2013) (finding that the plaintiff's production of his medical records did not mean that the plaintiff complied with Rule 26(a)(2)(C)). Thus, the affidavit of Dr. Volnikh is only admissible if the failure to comply with the Rule 26 disclosures was substantially justified or harmless.

16

The Anderson Defendants' failure to comply with Rule 26 was substantially justified by their belief that Dr. Volnikh was a fact witness. "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact." In re Denture Cream, 2012 WL 5199597, at *5 (internal quotations omitted). Here, the Anderson Defendants did not provide information on Dr. Volnikh's report as part of their Rule 26 disclosures because of their belief that she is purely a fact witness. (Doc. # 80 at 7–9). Their failure to comply with Rule 26 was based on their erroneous — but reasonable — understanding that disclosure was not necessary. Indeed, classifying a treating physician as either a fact or expert witness is not always a straightforward task. See Ables-Thomas v. MV Contract Transp., Inc., No. 1:18-cv-3252-SDG, 2020 WL 10485727, at *2 (N.D. Ga. Dec. 21, 2020) ("The distinction between a "treating physician as a fact versus an expert witness depends on the nature of the testimony the witness intends to offer."); Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1316 (11th Cir. 2011) ("The testimony of treating physicians presents special evidentiary problems

17

that require great care and circumspection by the trial court."). While the Court ultimately concludes that the nature of Dr. Volnikh's testimony renders her a hybrid witness, the Anderson Defendants' belief that she was a fact witness is justified. Dr. Volnikh's affidavit and conclusion regarding the order of death is based on the autopsy that she personally conducted. (Volnikh Aff. Doc. # 73-1 at ¶¶ 9-12). It was not unreasonable for the Anderson Defendants to consider this testimony to be "limited to [Dr. Volnikh's] observations based on personal knowledge." Cooper v. Marten Transport, Ltd., No. 1:10-cv-3044-AT, 2014 WL 11517830 at *2 (N.D. Ga. May 23, 2014) (internal citations omitted).

Further, the Court finds that the insufficient Rule 26 disclosure is harmless. Whether Eva Anderson predeceased Adam Anderson has always been a potential issue in this litigation. (Doc. # 47 at ¶¶ 23-24). While it is true that "[a]llowing medical records to be submitted 'in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary,''" the subject of Dr. Volnikh's testimony should have been readily apparent to the Wilkerson Defendants. Jones, 2013 WL 8695361, at *4 (citing Kondragunta v. Ace Doran Hauling & Rigging Co., 2013 WL 1189493, No. 1:11-cv-01094-

JEC, at *6 (N.D. Ga. Mar. 21, 2013). Likewise, the Anderson Defendants filed their motion for summary judgment — and the affidavit of Dr. Volnikh — on May 25, 2022, three weeks before the conclusion of discovery. (Doc. # 73; Doc. # 51 at 1). The Wilkerson Defendants could have moved to extend the discovery period in order to take Dr. Volnikh's deposition, but chose not to do so. See Wademan v. United States, No. 16-cv-10002-KING/TORRES, 2017 WL 7794322, at *3 (S.D. Fla. May 17, 2017) (finding failure to disclose pursuant to Rule 26 harmless where a late supplemental disclosure occurred prior to the discovery deadline); see Beasley v. Bank, No. 6:20-cv-883-WWB-EJK, 2021 WL 9204484, at *3 (M.D. Fla. Dec. 23, 2021) (finding a belated disclosure harmless where it occurred before the expiration of the discovery deadline). Therefore, because the Wilkerson Defendants had the opportunity to alleviate any potential harm by deposing Dr. Volnikh, the Court finds the insufficient disclosure harmless.

The Wilkerson Defendants' construed motion to strike is denied.

## B.  **Summary Judgment**

The Anderson Defendants seek summary judgment on both counts of the Amended Complaint. (Doc. # 73). The Wilkerson Defendants have asserted two affirmative defenses. (Doc. # 55

at 6). Because the Wilkerson Defendants' affirmative defenses may affect whether summary judgment is proper, the Court will address the affirmative defenses first.

### 1.   The Wilkerson Defendants' Affirmative Defenses

The Wilkerson Defendants raise two affirmative defenses. First, the Wilkerson Defendants assert that Ben Hill Griffin's complaint fails to state any claim on which relief may be granted. (Doc. # 55 at 6). Second, the Wilkerson Defendants assert that the complaint is not ripe for adjudication. (Id.).

While "[e]ntry of a summary judgment is improper when there is no evidence contradicting or opposing an affirmative defense," Acciard v. Whitney, No. 2:07-cv-476-KMM-DF, 2011 WL 4552564, at *5 (M.D. Fla. Sept. 30, 2011), a party cannot evade the entry of summary judgment by labeling what is otherwise a denial of an element of the plaintiff's prima facie case as an affirmative defense. See In re Rawson Food Service, Inc., 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense.").

The Wilkerson Defendants' First Affirmative Defense, which alleges the complaint fails to state any claim on which

relief may be granted, does not prevent the entry of summary judgment. "[T]he failure to state a claim is not an affirmative defense[.]" Philpot v. MyArea Network, Inc., No. 8:20-cv-1239-VMC-TGW, 2021 WL 2649236, at *13 (M.D. Fla. June 28, 2021); see In re Rawson, 846 F.2d at 1350 n.9 (noting that failure to state a claim is not an affirmative defense but rather a general denial). Rather, the Court may just treat this as a denial by the Wilkerson Defendants that Ben Hill Griffin is able to prevail on its claims. See Home Mgmt. Sols., Inc. v. Prescient, Inc., No. 07-20608-CIV, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007) (explaining in the context of a motion to strike affirmative defenses that, when a defendant labels a negative averment as an affirmative defense, "the proper remedy is not [to] strike the claim, but rather to treat is as a specific denial"). Thus, the Wilkerson Defendants' First Affirmative Defense does not impact the Anderson Defendants' Motion for Summary Judgment.

The Court will, however, evaluate ripeness as an affirmative defense. See Penn-America Ins. Co. v. Pavillion Foods, Inc., No. 18-62656-CIV-MARRA, 2019 WL 2105880, at *2 (S.D. Fla. Mar. 20, 2019) ("[R]ipeness is an appropriate ground for an affirmative defense."); Advocate Commc'ns, Inc. v. Town Found., Inc., No. 04-61408-CIV, 2005 WL 8155323, at

\*2 (S.D. Fla. Aug. 10, 2005) (declining to strike ripeness as an affirmative defense).

As an initial matter, the Wilkerson Defendants do not provide any argument for why the complaint is not ripe. But because a determination of ripeness bears on the Court's jurisdiction over the case, the Court will nevertheless address the issue. See Digit. Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) ("Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review.").

"The doctrine of ripeness, which originates from the Constitution's Article III requirement that courts only hear actual cases and controversies, presents a 'threshold jurisdictional question of whether a court may consider the merits of a dispute.'" Valley Creek Land & Timber, LLC v. Colonial Pipeline Co., 432 F. Supp. 3d 1360, 1363 (N.D. Ala. 2020) (quoting Elend v. Basham, 471 F.3d 1199, 1204–05 (11th Cir. 2006)). "In addition to jurisdictional considerations, ripeness also involves judicial prudence; even when the case meets the constitutional minimum for jurisdiction, 'prudential considerations may still counsel judicial restraint.'" Id. (quoting Digit. Props., Inc., 121

F.3d at 589). Courts "assess ripeness on a claim-by-claim basis." Club Madonna, Inc. v. City of Miami Beach, 924 F.3d 1370, 1380 (11th Cir. 2019).

Ripeness is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1304 (11th Cir. 2017) (citation and internal quotation marks omitted). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of merely potential or abstract disputes." Valley Creek Land & Timber, LLC, 432 F. Supp. 3d at 1365. Thus, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted).

"In assessing whether a dispute is concrete enough to be ripe, [courts] evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Wollschlaeger, 848 F.3d at 1304 (citation and internal quotation marks omitted). "Concerning fitness for judicial decision, [courts] ask whether the parties raise an issue that [courts] can decide

without further factual development and whether the institutional interests of the court and agency favor immediate review." <u>Club Madonna, Inc.</u>, 924 F.3d at 1380. "As for hardship, litigants must show that they are forced to choose between foregoing lawful activity and risking substantial legal sanctions." <u>Id.</u> (citation and internal quotation marks omitted). A declaratory judgment action does not violate the ripeness requirement where "there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227 (1937).

Here, there are sufficient facts on which the Court can base its decision without engaging in speculation. Ben Hill Griffin's complaint raises the issue of the distribution of benefits to be paid out to Adam Anderson's beneficiaries upon his death. (Doc. # 47). Although the circumstances of Adam and Eva Anderson's deaths have raised issues with respect to Adam Anderson's Pension Plans, the parties have adduced facts on which the Court can base its decision. Importantly, the dispute is not hypothetical — Ben Hill Griffin has identified a present need to identify the correct beneficiaries of the Pension Plans and has raised legitimate legal questions that

require resolution. As will be detailed in the sections that follow, a present controversy exists as to the distribution of benefits under the Pension Plans. See <u>Chambless v. Masters, Mates, & Pilots Pension Plan</u>, 571 F. Supp. 1430, 1437–38 (S.D.N.Y. 1983) (finding an action seeking a declaration or clarification of rights under an ERISA plan ripe for review); <u>Janowski v. Int'l Brotherhood of Teamsters</u>, 673 F.2d 931, 935 (7th Cir. 1982) (explaining an action that "seeks a determination of the nature and scope of Plan participants' rights to future benefits" is ripe because such an action "is precisely the type . . . contemplated by the statute." (emphasis added)), <u>vacated on other grounds and remanded for reconsideration of attorneys' fees</u>, 463 U.S. 1222 (1983).

Thus, the Court finds this case is ripe for judicial resolution. The Wilkerson Defendants' Second Affirmative Defense does not prevent the entry of summary judgment.

### 2.   **The Profit-Sharing Plan (Count I)**

The Profit-Sharing Plan states, in relevant part:

> In the event no valid designation of Beneficiary exists with respect to all or a portion of the death benefit, or if the Beneficiary of such death benefit is not alive at the time of the Participant's death and no contingent Beneficiary has been designated, then to the extent that such death benefit is not automatically payable to the surviving Spouse in accordance with the other provisions

> of this Section, such death benefit will be
> paid in the following order of priority to:
>   (1) the Participant's surviving Spouse;
>   (2) the Participant's issue, including
>      adopted children, per stirpes;
>   (3) the Participant's surviving parents, in
>      equal shares; or
>   (4) the Participant's estate.

(Doc. # 47-5 at 35-36).

The Plan also contains a provision in the event of simultaneous death:

> If a Participant and his or her Beneficiary
> should die simultaneously, or under
> circumstances that render it difficult or
> impossible to determine who predeceased the
> other, then unless the Participant's
> Beneficiary designation otherwise specifies,
> the Administrator will presume conclusively
> that the Beneficiary predeceased the
> Participant.

(Id. at 42). Under the operative Profit-Sharing Plan Beneficiary Designation Form, Adam Anderson designated Eva Anderson as his sole beneficiary. (Doc. # 47-6 at 2).

The threshold issue for the Court with respect to the Profit-Sharing Plan is thus whether the designation listing Eva Anderson as the sole beneficiary controls. The Court finds that it does not. The language of the Profit-Sharing Plan requires the named beneficiary to be alive at the time of the participant's death. (Doc. # 47-5 at 41). According to Dr. Volnikh, Eva Anderson predeceased Adam Anderson. (Volnikh

Aff. Doc. # 73-1 at ¶ 12). Indeed, Eva Anderson's death certificate lists her marital status as "married," while Adam Anderson's lists his as "widowed." (Doc. # 73-1 at 8; 21). Therefore, at the time of Adam Anderson's death, he neither had a named beneficiary nor a "surviving spouse." (Doc. # 47-5 at 41). However, even if the Court did not consider the affidavit of Dr. Volnikh, the simultaneous death provision of the Profit-Sharing Plan necessitates a conclusive presumption that Eva Anderson predeceased Adam Anderson. (Doc. # 47-5 at 41). The Court thus finds as a matter of law that Eva Anderson predeceased Adam Anderson. Accordingly, under the terms of the Profit-Sharing Plan, the death benefit under the Plan is to be paid to "the Participant's issue, including adopted children, per stirpes[.]"

Given that the benefits payable under the Profit-Sharing Plan are to be distributed to Adam Anderson's issue, Ben Hill Griffin seeks a declaration as to three issues with respect to the Profit-Sharing Plan: the effect of Adam and Michelle Anderson's QDRO, whether Eva Anderson's children are entitled to a portion of the death benefit, and whether Candice Luke is to be included as one of Adam Anderson's beneficiaries. (Doc. # 47 at ¶ 53). The Court will address each of these issues in turn.

i.  **<u>Effect of Adam and Michelle Anderson's</u>**
**<u>Family Court Judgment</u>**

In its complaint, Ben Hill Griffin asked whether Adam Anderson's death benefit payable under the Profit-Sharing Plan should be set aside for the benefit of Michelle Anderson. (Doc. # 47 at ¶ 53(c)). As an initial matter, at the summary judgment stage, none of the Defendants explicitly contest Ms. Anderson's entitlement to benefits pursuant to the QDRO. (Doc. # 73 at 9; Doc. # 78).

In general, ERISA plan administrators must discharge their duties "in accordance with the documents and instruments governing the plan[.]" 29 U.S.C. § 1104(a)(1)(D). ERISA contains an anti-alienation and anti-assignment provision that requires covered pension plans to require that benefits may not be assigned or alienated. 29 U.S.C. § 1056(d)(1). "These statutes limit the effect of agreements outside the plan that purport to direct benefits to someone other than the listed beneficiary." <u>Hallman v. Hallman</u>, No. 5:12-cv-4-MTT, 2013 WL 820377, at *2 (M.D. Ga. Mar. 5, 2013); <u>see</u> <u>Kennedy v. Plan Adm'r for Dupont Sav. and Inv. Plan</u>, 555 U.S. 285, 300 (2009) (holding that an ERISA claim "stands or falls by 'the terms of the plan'"); <u>Riordan v. Commonwealth</u> <u>Edison Co.</u>, 128 F.3d 549, 553 (7th Cir. 1997) (ERISA

generally requires the plan fiduciary to pay benefits to the beneficiary properly designated under the plan's terms).

However, the anti-alienation and anti-assignment provision does not apply to qualified domestic relations orders. 29 U.S.C. § 1056(d)(3)(A). ERISA defines a QDRO as a domestic relations order:

> (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and (II) with respect to which the requirements of subparagraphs (C) and (D) are met[.]

29 U.S.C. § 1056(d)(3)(B)(i). Under Section 1056(d)(3)(C), a domestic order is a QDRO:

> only if [it] clearly specifies — (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). Under Section 1056(d)(3)(D), a domestic order is a QDRO:

> only if such order — (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan, (ii) does not require the plan to provide increased benefits (determined on the

> basis of actuarial value), and (iii) does not
> require the payment of benefits to
> an alternate payee which are required to be
> paid to another alternate payee under another
> order previously determined to be a qualified
> domestic relations order.

29 U.S.C. § 1056(d)(3)(D).

Here, on October 26, 2021, the Family Court for the Divorce Action entered an order entitled "Qualified Domestic Relations Order" detailing Michelle Anderson's share of Adam Anderson's interest in the Profit-Sharing Plan. (Doc. # 73-4 at 37–41). The Family Court's order directed Ben Hill Griffin to divide Adam Anderson's interest in the Profit-Sharing Plan into two separate accounts, effective December 31, 2011: (a) one account to be allocated and assigned to Defendant Michelle R. Anderson in the amount of Thirty-Five Thousand, Five Hundred Seventy-Eight and 81/100 Dollars ($35,578.81) — plus any passive gains or losses having accrued as of the Split Date until distribution; and (b) a second account in the name of Adam W. Anderson where the balance of his interest in the Profit-Sharing Plan would remain. (Id. at 38).

The Family Court's order complies with the requirements for a QDRO. The order specifies the name and address of alternate payee, who is Michelle Anderson. (Id. at 41). The order states that the amount of Adam Anderson's benefits to

be paid to Michelle Anderson is $35,578.81, plus any passive gains or losses having accrued as of the split date until distribution. (Id. at 38). The order defines the split date as December 31, 2011, indicating the period to which the order applies. (Id.). And the order states that it is applicable to the Profit-Sharing Plan. (Id. at 37). Further, the Family Court's order does not require the Profit-Sharing Plan to provide any type or form of benefit not otherwise provided by the plan, nor does it require the plan to provide increased benefits. (Id. at 37-41). Nor have any of the parties provided evidence that another order previously determined to be a QDRO governs the payment of benefits at issue.

Further, the fact that Adam Anderson died before the entry of the QDRO does not affect Michelle Anderson's interest in the Profit-Sharing Plan. Under 29 C.F.R. § 2530.206, "a domestic relations order shall not fail to be treated as a qualified domestic relations order solely because of the time at which it is issued." 29 C.F.R. § 2530.206; see Patton v. Denver Post Corp., 326 F.3d 1148, 1150 (10th Cir. 2003) (finding that a putative alternate payee could seek a declaration that a domestic relations order was a QDRO even after the death of the plan participant); Hogan v. Raytheon,

Co., 302 F.2d 854, 857 (8th Cir. 200) (stating that a domestic relations order can be qualified posthumously).

The Court therefore finds that the Family Court's order qualifies as a QDRO. Thus, the QDRO governs Michelle Anderson's entitlement to benefits under the Profit-Sharing Plan. To the extent the QDRO designates Michelle Anderson as an alternate payee, Ben Hill Griffin is directed to distribute the proceeds of the Profit-Sharing Plan pursuant to the QDRO entered on October 21, 2021.

### ii.   **Applicability of a Slayer Statute**

In its complaint, Ben Hill Griffin inquired whether the death benefit under the Profit-Sharing Plan should be paid only to Adam Anderson's children, not his wife's children, despite the fact that he allegedly murdered Eva Anderson. (Doc. # 47 at ¶ 53(a)).

Although the Wilkerson Defendants do not argue that Florida's "Slayer Statute" applies to the case at bar, the Anderson Defendants preemptively argue against its applicability. Because the Court has an "independent obligation to determine whether a party is entitled to summary judgment," it will briefly address the Anderson Defendants' argument. Traveler's Prop. Cas. Co. of America v. Moore, No.

1:11-cv-236-AT, 2012 WL 12871630, at *3 (N.D. Ga. July 6, 2012).

Present-day slayer statutes arise from the common-law principle that "prevented a person who wrongfully killed another from sharing in any property from the victim's estate." Caterpillar Inc. v. Estate of Lacefield-Cole, 520 F. Supp. 2d 989, 996 (N.D. Ill. 2007).

While there is no federal slayer statute, federal common law embraces the equitable principle underlying such statutes. See Mut. Life. Ins. Co. v. Armstrong, 117 U.S. 591, 600 (1886) ("It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken."). The relevant Florida statute provides "A surviving person who unlawfully and intentionally kills or participates in procuring the death of the decedent is not entitled to any benefits under the will or under the Florida Probate Code, and the estate of the decedent passes as if the killer had predeceased the decedent." Fla. Stat. § 732.802(1).

Regardless of whether federal or state law governs here, the Court agrees with the Anderson Defendants that a slayer statute is inapplicable. See Honeywell Sav. and Ownership Plan v. Jicha, No. 8-4265 (DRD), 2010 WL 276237 (D. N.J. Jan.

15, 2010) (noting several district courts have reasoned that ERISA likely does not preempt state slayer statutes but that "it is unnecessary to determine the preemption issue since federal common law provides the same result as a slayer statute"). Florida courts have declined to extend the Florida slayer statute to bar relatives of a murderer from inheriting under a decedent's will. See Fiel v. Hoffman, 169 So. 3d 1274, 1280 (Fla. 4th DCA 2015); Chatman v. Currie, 606 So. 2d 454, 456 (Fla. 1st DCA 1992) ("We hold as a matter of law that section 732.802 does not apply to an innocent contingent beneficiary's entitlement to life insurance benefits resulting from the killing of the primary beneficiary by the insured who then commits suicide."). A federal court has specifically found in the ERISA context that the Illinois slayer statute does not apply in an action to determine the proper distribution of benefits under an employee retirement savings plan after the employee murdered his wife and thereafter committed suicide. Caterpillar Inc., 520 F. Supp. 2d at 992.

This result comports with the purpose of slayer statutes, which is to ensure that a murderer does not stand to benefit from his or her own illegal conduct. Gardner v. Nationwide Life Ins. Co., 206 S.E.2d 818, 821 (N.C. Ct. App.

1974); <u>see</u> <u>Chatman</u>, 606 So. 2d at 456 ("[T]he general rule that a person cannot be permitted to profit from a wrongful act is inapplicable where the wrongdoer stands to gain nothing by his act, as where he kills himself soon after committing the wrongful act"). Here, the beneficiaries of Adam Anderson's Profit-Sharing Plan have engaged in no wrongful conduct. Adam Anderson himself will not gain anything from Eva Anderson predeceasing him, because he died shortly thereafter. Therefore, the Court agrees with the Anderson Defendants' determination that Florida's slayer statute does not apply to them.

### iii. <u>Inclusion of Candice N. Luke</u>

In its complaint, Ben Hill Griffin inquired whether Candice Luke should be included as one of Adam Anderson's biological children and beneficiaries. (Doc. # 47 at ¶ 53(b)).

"The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." <u>Liberty Life Assur. Co. of Bos. v. Kennedy</u>, 358 F.3d 1295, 1302 (11th Cir. 2004). Here, the Profit-Sharing Plan dictates that in the event there exists no valid beneficiary or surviving spouse, the death benefit will be paid to the Participant's issue, including adopted children. Construing

the Profit-Sharing Plan in accordance with its terms' "plain and ordinary meaning," the Court finds that the death benefit ought to be distributed to Adam Anderson's children, both adopted and biological. See Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan, 833 F.3d 1299, 1307 (11th Cir. 2016) (discussing the application of contract interpretation principles to ERISA plans). Thus, the issue before the Court is whether Candice Luke qualifies as "issue" of Adam Anderson.

As an initial matter, the Anderson Defendants admit in their answer that Candice Luke is the biological child of Adam Anderson. (Doc. # 47 at ¶ 22; Doc. # 59 at ¶ 22; Doc. # 60 at ¶ 22; Doc. # 61 at ¶ 22). The Wilkerson Defendants state that they are without knowledge. (Doc. # 55 at ¶ 22). However, in their Motion for Summary Judgment, the Anderson Defendants present evidence in the form of a half sibling DNA test demonstrating Candice Luke is the biological child of Adam Anderson. (Doc. # 73 at ¶ 24). The Anderson Defendants explain that Candice Luke and Sheenia Nealey participated in the DNA test for the purposes of confirming that Candice Luke's biological father was Adam Anderson. (Id.). The DNA test concluded that Sheenia Nealey and Candice Luke's "probability of relatedness as paternal half siblings is 99.91% as compared with the possibility that they are unrelated persons. These

findings support the assertion that SHEENIA D. NEALEY and CANDICE N. LUKE have the same father." (Doc. # 73-3 at 3).

By adducing the results of the DNA test, the Anderson Defendants have met their "initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Hickson Corp., 357 F.3d at 1260. To demonstrate that summary judgment is inappropriate, the Wilkerson Defendants therefore must "'go beyond the pleadings,' and by [their] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery, 64 F.2d at 593-94 (quoting Celotex, 477 U.S. at 324).

Here, the Wilkerson Defendants have not presented any evidence to call the Anderson Defendants' contention into dispute. There is thus no conflict between the parties' evidence that would warrant a denial of summary judgment. The Anderson Defendants have demonstrated that Candice Luke is the biological child of Adam Anderson. Therefore, under the plain terms of the Profit-Sharing Plan, Candice Luke is entitled to receive a share of the death benefit under the Plan.

Because there are no material facts in dispute and the distribution of the benefits of the Profit-Sharing Plan can be determined as a matter of law, the Anderson Defendants' Motion for Summary Judgment is granted as to Count I. $35,578.81, plus any passive gains or losses having

accrued from December 31, 2011, until distribution, of the Profit-Sharing Plan is to be set aside for Michelle Anderson pursuant to the Family Court's Qualified Domestic Relations Order. The remainder of the death benefit payable under the Profit-Sharing Plan is to be distributed to Adam Anderson's children, including Candice Luke, per stirpes.

### 3.   **The MS Plan (Count II)**

#### i.   **Effect of the Beneficiary Designation Form**

In its complaint, Ben Hill Griffin inquired whether it should pay Michelle Anderson 100% of Adam Anderson's death benefit payable under the MS Plan, because she is the only living primary beneficiary. (Doc. # 47 at ¶ 61(c)). The question before the Court is thus whether Ben Hill Griffin should give effect to the designation of A.W.A. as a secondary beneficiary even though there is a living primary beneficiary.

Again, the language of an ERISA plan itself governs the award of benefits under the plan. Liberty Life, 358 F.3d at 1302. Courts "interpret ERISA provisions as they are likely to be "understood by the average plan participant, consistent with the statutory language." Walker v. Wal-Mart Stores, Inc., 159 F.3d 938, 940 (5th Cir. 1998).

The MS Plan provides:

> A participant shall designate his or her Beneficiary to receive benefits under the Plan by completing the Beneficiary Designation. If more than one Beneficiary is named, the shares and preference of each shall be indicated.

(Doc. # 73-2 at 100).

Here, Adam Anderson's Change of Beneficiary form indicates that Michelle and Eva Anderson are both primary beneficiaries. (Id. at 109). The form designates Michelle Anderson to receive $1,026.00 per month and Eva Anderson to receive $2,724.00 per month. Importantly, the form also lists A.W.A. as the secondary beneficiary "for $2,724.00 *of Eva*." (Id.) (emphasis added). Construing the Change of Beneficiary form in accordance with its terms' "plain and ordinary meaning," the Court interprets the designation of A.W.A. as a secondary beneficiary of Eva to entitle A.W.A. to benefits upon Eva's death regardless of whether Michelle Anderson is still alive. See Alexandra H., 833 F.3d at 1307 (discussing

the application of contract interpretation principles to ERISA plans). Because Adam Anderson made clear that A.W.A. was a secondary beneficiary as to Eva only, a finding that A.W.A. is entitled to $2,724.00 under the MS Plan coheres with the plain language of the Change of Beneficiary form.

Thus, notwithstanding Michelle Anderson's designation as a primary beneficiary, A.W.A. is entitled to receive Eva Anderson's share under the MS Plan.

### ii. **Effect of the Family Court Decision**

In its complaint, Ben Hill Griffin inquired whether it should pay Michelle Anderson $1,026 per month from Adam Anderson's *death* benefit payable under the MS Plan, even though the reference to $1,026 in the Divorce Judgment was based upon Adam Anderson's *retirement* benefit. (Doc. # 47 at ¶ 61(a)). Ben Hill Griffin notes that "Mr. Anderson was apparently confusing the retirement benefit (which is now gone), with the death benefit, and used a figure calculated as of February 1, 2012, which was irrelevant to the death benefit." (Id. at ¶ 42). According to Ben Hill Griffin, "[i]t is unclear whether Michelle should receive any of the death benefit at all, as the Final Judgment describes only the retirement benefit which no longer exists." (Id. at ¶ 44). The question before the Court is thus whether Ben Hill Griffin

is bound by the beneficiary identified on the MS Plan even if
there is reason to believe that the beneficiary designation
was in error.

Again, the language of the relevant plan governs the
award of benefits under ERISA. Liberty Life, 358 F.3d at 1302.
"[B]y giving a plan participant a clear set of instructions
for making his own instructions clear, ERISA forecloses any
justification for enquiries into nice expressions of intent,
in favor of the virtues of adhering to an uncomplicated rule."
Kennedy, 555 U.S. at 300–01.

Here, Adam Anderson's Change of Beneficiary form states
that Michelle and Eva Anderson are the primary beneficiaries
of the MS Plan, to receive $1,026.00 and $2,724.00 per month
respectively. (Doc. # 73-2 at 109). A.W.A. is listed as the
secondary beneficiary for Eva Anderson's portion. (Id.). Any
speculation as to whether the beneficiary designation was in
error is of no moment. Ben Hill Griffin is bound by the
language of the plan. Because Adam Anderson explicitly listed
Michelle Anderson as the beneficiary of $1,026 per month, Ben
Hill Griffin ought to distribute the benefits of the MS Plan
in accordance with the Change of Beneficiary form. (Id.); see
Liberty Life, 358 F.3d at 1302 (noting the language of a plan
under ERISA governs the award of benefits).

Because there are no material facts in dispute and the distribution of the benefits of the MS Plan can be determined as a matter of law, the Anderson Defendant's Motion for Summary Judgment is granted as to Count II.

Accordingly, it is

**ORDERED, ADJUDGED, AND DECREED:**

(1)   Defendants A.W.A., Adam "AJ" Anderson, Cierra Michelle Anderson, Michelle R. Anderson, Candice Nicole Luke, and Sheenia Dannett Nealey's Motion for Summary Judgment (Doc. # 73) is **GRANTED** on Counts I and II.

(2)   $35,578.81, plus any passive gains or losses having accrued from December 31, 2011, until distribution, of the Profit-Sharing Plan is to be set aside for Michelle Anderson pursuant to the Family Court's Qualified Domestic Relations Order.

(3)   The remainder of the death benefit payable under the Profit-Sharing Plan is to be paid only to Adam Anderson's children.

(4)   Candice Luke is one of Adam Anderson's children entitled to receive a share of the death benefit under the Profit-Sharing Plan.

(5)   A.W.A. is entitled to receive Eva Anderson's share of the death benefit payable under the MS Plan as her contingent beneficiary.

(6)   Ben Hill Griffin, Inc. is to follow the $1,026 figure stated on the Change of Beneficiary form with respect to Michelle Anderson's share of the death benefit payable under the MS Plan.

(7)   The Clerk shall enter judgment accordingly and, thereafter, **CLOSE** this case.

**DONE and ORDERED** in Chambers in Tampa, Florida, this 23rd day of November, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE